Bryan GIRDNER and Jewel Girdner, Plaintiffs in Error,

v.

Alton GIRDNER, Administrator of the Estate of R. Girdner, deceased, and W. T. Girdner, Administrator of the Estate of Mary C. Girdner, deceased, Defendants in Error.

No. 38102.

Supreme Court of Oklahoma.

March 31, 1959.

Roy Frye, Sr., Roy Frye, Jr., Paul V. Carlile, Sallisaw, for plaintiffs in error.

G. O. Grant, Stilwell, Jack Bliss, Successor to Bliss & Bliss, Tahlequah, W. S. Agent, Sallisaw, for defendants in error.

HALLEY, Justice.

This action was commenced by Alton Girdner, administrator of the estate of R. Girdner, deceased, who died January 26, 1954, naming Bryan Girdner, Steve Girdner and Shelby Girdner as defendants. It was alleged that during the life of R. Girdner he had executed certain deeds conveying to defendants lands in Adair County, to be held by grantees in trust for the grantor, his heirs and assigns. It was also alleged that R. Girdner had turned over to Bryan Girdner certain sums of money to be held for the benefit of the heirs of R. Girdner, and had also turned over to Bryan Girdner personal property to be held upon the same basis, including cash, and that Bryan Girdner had also collected and still held insurance money paid for the fire loss of a dwelling located upon the land mentioned, and that Bryan Girdner refused to turn any of such property over to the plaintiff.

On September 30, 1955, the court rendered judgment for plaintiff but this judgment was set aside May 23, 1956, when the court sustained a motion of Bryan Girdner for a new trial.

January 3, 1957, Mary Girdner died intestate and W. F. Girdner was appointed administrator of her estate and intervened in this action, alleging generally the same facts alleged by the administrator of her deceased husband. Mary Girdner had previously been declared incompetent and a guardian had been appointed.

On November 16, 1956, a second hearing was had and it was agreed that the evidence previously introduced should be considered and additional evidence was introduced. The court made findings of fact and conclusions of law, which will be considered later. The judgment rendered is in general against Bryan Girdner, and he has appealed. The parties will be referred to by name, or as they appeared in the trial court.

It appears that about 1916 R. Girdner purchased a tract of 190 acres in Adair County. This land became the homestead of R. Girdner and wife, Mary Girdner, and continued as their homestead until the death of Mary Girdner in 1957. These parents had 12 adult children living when this action was filed. In 1942 Bryan Girdner entered the Army and remained in the service until 1945. He made an allotment to his father during that time and sent him some money orders. Bryan Girdner testified that before he entered the service his father told him the home place was to be his when he returned; and that when he returned his father gave him a deed to the 190 acres, which he did not file for record until 1949. This deed was dated November 1, 1942.

In 1946, R. Girdner and Mary Girdner applied to the State Department of Public Welfare for old age assistance. These applications were approved effective June 1, 1946, and each received $30 per month until April, 1949, or a total of about $2,500. About five months later the warranty deed they had given to Bryan Girdner conveying the 190 acre tract was filed for record. It retained a life estate in the grantors. The Department of Public Welfare had filed an action to recover what it had paid to R. Girdner and wife, and included Bryan Girdner as a defendant, whose attorney wrote to Charles Girdner as follows:

"Dear Charley:

"The Department of Public Welfare is suing your father and mother and also suing your brother, Bryan, for $2,545, and are attempting to set aside a deed on a 190 acres of land that your father and mother made to Bryan, in 1942.

"This deed was acknowledged before Mr. Dornback, a Notary Public at Stilwell and it also shows that you were a witness to the deed. The deed is dated, November 1, 1942, and your father and mother reserved life estate in this land.

"I would like for you to write me what you remember about this deed, and if you remember whether it was about November, 1942, * * *"

In August, 1953, Bryan Girdner wrote to his brother Charles Girdner at Klamath Falls, Oregon, as follows:

" * * * Charley about the place. The day the House burned The State & Welfare Department filed a suit against Paw & Mama Steve & me. So I went Down to Paul Carlile & took The Petition They filed & my Deed Paw & Mama made me and your name was on it as a witness So since Mama has got sick & can't Testsy & Dornback is Dead. The state is trying to take the place away from me for what Paw & Mama drawed while they was on the old age pension. says It was a falce deal between me & Paw & Mama. So I told Paul Carlile that Paw & Mama made me a Deed in 1942 and I sent them alotment while I was over seas. That they wanted me to have the place. That it was mine & wasn't no false deed so you write & tell him the same thing So the State can't take it & The Insurance Company will half to pay The Insurance So I can build them a house back & give it to Paw. It is his & not mine and it is in my name, but Don't let anybody Read this & tare it up when you get thro with it. Don't let Bug

and Alton now anything about this. If anything halpen Ill let you know.
"By Bryan"

The last letter quoted indicates that Bryan Girdner did understand that the deed to him in 1942 did not convey the 190 acre tract to him, subject only to the life estate reserved to his father and mother. In their applications for old age assistance they both said they owned this land, but each also said they had conveyed no assets during the preceding five years, but five years had not elapsed from the date of that deed.

The court found and concluded, among other things that:

the deed by R. Girdner and wife to Bryan Girdner, dated November 1, 1942, conveying the entire 190 acres, but reserving a life estate in the grantors, was null and void for reasons later discussed and that the deed from R. Girdner and wife to Bryan Girdner, dated July 26, 1951, and unrecorded, was void because Mary Girdner was incompetent and her signature thereon was a forgery, but found that later deeds by R. Girdner and wife were valid, to wit:

(a) Deed dated July 2, 1946, to Shelby Girdner and wife conveying 10 acres of the 190 acre tract;

(b) 25 acres conveyed December 6, 1948, by R. Girdner and wife to Shelby Girdner, and

(c) 20 acres conveyed by R. Girdner and wife to Steve Girdner August 28, 1948.

The court gave plaintiffs judgment against Bryan Girdner for $200 for livestock of R. Girdner taken over by Bryan Girdner and a judgment for $6,740, which included cash delivered by R. Girdner to Bryan Girdner prior to the death of R. Girdner. This item included $2,850 collected by Bryan Girdner on an insurance policy covering the dwelling destroyed by fire.

Upon motion for a new trial being overruled Bryan Girdner and wife, have appealed to this Court. Some fifteen assign-

ments of error were submitted under four propositions, which are as follows:

"The court erred in his findings of facts and judgment that the defendant, Bryan Girdner, was given the sum of $3890.00, in cash, for safe keeping and not as a gift, when the undisputed evidence discloses that defendant, Bryan Girdner held said money in trust and complied with the terms of said Trust.

"The court erred in his finding of facts and judgment that the plaintiff administrator was entitled to a judgment for the sum of $2850.00, collected on a fire insurance policy issued to Bryan Girdner on a house located on the real estate involved in this action, the premium of which had been wholly paid by Bryan Girdner from his own funds as remainderman.

"The court erred in his finding of facts and judgment that the deed dated July 26, 1951, and unrecorded from R. Girdner and Mary C. Girdner to Bryan Girdner, was void for the reason of incompetency of Mary C. Girdner and that her signature was a forgery.

"The court erred in his finding of facts and judgment that the deed to 190 odd acres from R. Girdner and Mary Girdner, reserving a life estate, dated November 1, 1942, and recorded in Book 87 on page 290 of the records of Adair County was a forgery on the part of Mary Girdner and that was an attempt to convey the base legal title to said real estate in trust."

Bryan Girdner complains of the finding that the $3,890 turned over to him by his father was for safe keeping and not as a gift, because the evidence discloses that Bryan Girdner held the money in trust and fully complied with the terms of the trust. He testified that his father gave him the amount named on two occasions in cash from his father's money belt, and told him that in the event of R. Girdner's death Bryan should use the money to pay his hospital bill, medical expense and funeral expenses and use the balance to take care of Bryan's mother, and that Bryan complied fully with his father's instructions, and in fact paid out $10 more than the amount received.

We note, however, that three of Bryan's brothers, Otis, Charley and Alton Girdner, all testified that after the death of their father they discussed the matter of this money of their father and that it was agreed that this money would be deposited in the bank in the name of three of R. Girdner's sons, and Bryan never mentioned the above instructions of R. Girdner to Bryan. We will not say that Bryan was required to speak up under the circumstances.

There is no question but that a trust may be created under the above facts. Section 175.2, 60 O.S.1951, provides that a trust may be created for any purpose or purposes for which a contract may be made. In Carson v. Harrod, 91 Okl. 62, 215 P. 929, the rule is announced in the first paragraph of the syllabus as follows:

"Where a person receives money from another under an agreement to pay out such money for the principal, for some particular purpose, a trust relation arises between the parties to the transaction."

It is provided in the Oklahoma Trust Act, 60 O.S.1951 § 175.6 as follows:

"A trust may be created by:

\* \* \* \* \* \*

"B. A transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person; \* \* \*"

There is no requirement that the trust be in writing and Clause F of this Section provides that no trust in relation to real estate shall be valid unless in writing. This shows that trusts involving personal property need not be in writing. We held in Barnes v. Barnes, Okl., 280 P.2d 996, that 60 O.S.1951 § 172 did not apply to personal or express trusts but only to business trusts.

Under the above cases the money held by Bryan Girdner was held in trust. He was obligated to use it for the purposes directed by his father, whose direction extended beyond his lifetime, for Bryan was directed to use whatever remained after his father's death in taking care of the mother and paying certain obligations. Bryan Girdner testified that he complied with these directions. We do not think that this has been clearly denied and he should be relieved of the obligation to repay it to the estates of his father and mother.

The case of Sauls v. Whitman, 171 Okl. 113, 42 P.2d 275, relied upon by plaintiffs, is not applicable to this case because it was adopted before the passage of the Oklahoma Trust Act.

 Propositions 3 and 4 are discussed together by the defendants. Plaintiffs complain that the trial court erred in finding that the deed by R. Girdner and wife to Bryan Girdner, dated November 1, 1942, reserving to grantors a life estate, was a forgery as far as Mary Girdner was concerned and was an attempt to convey the base legal title to the 190 acres in trust.

In proposition 3 it is contended that the court erred in finding that the deed dated July 26, 1951, and not recorded, from R. Girdner and Mary Girdner to Bryan Girdner was void because Mary Girdner was then incompetent and further that her signature was a forgery.

It is admitted that the land involved in these conveyances constituted the homestead of R. Girdner and wife Mary Girdner and that Article 12, Section 2 of our Constitution provides no conveyance of the homestead, shall be made without the consent of his or her spouse, in the manner provided by law, and Section 4, 16 O.S. 1951, provides as follows:

"* * * no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one (1) year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced, or legally separated, * * *"

The deed dated November 1, 1942, was not recorded until 1949. Charley Girdner's name appears as a witness, but he testified that he did not sign as a witness. Shelby Girdner, Alton Girdner and Mrs. Lourine Girdner Hendrickson testified that the genuine signature of Mary Girdner did appear on two other deeds introduced in evidence. Defendants did not contend otherwise, and a comparison of the admitted signatures is strong evidence that Mary Girdner did not sign the deed of November 1, 1942. Charley Girdner was positive that his signature as a witness on the deed of November 1, 1942, was a forgery. The evidence is conflicting and we find that there is competent evidence to support the finding of the court that the signature of Mary Girdner on the deed of November 1, 1942, is a forgery, and is sufficient to support such a finding as to the deed dated July 26, 1951, because at that time Mary Girdner was incompetent.

In Stanfield v. Lincoln, 150 Okl. 289, 1 P.2d 387, it is said:

"Forgery is a fact to be established as any other fact, and, where a jury has passed upon the question and there is any evidence in the record reasonably tending to support the verdict, the same will not be disturbed by the Supreme Court on appeal."

Again in 26 C.J.S. Deeds § 70, p. 795, it is said:

"On conflicting evidence, it is for the jury or trial court to determine questions of fact, as with respect to * * * forgery and the genuineness of the deed, * * *. So also it is for the trier of the facts, on conflicting evidence, to determine questions with respect to the * * * mental capacity of the grantor to execute it * * *."

As to the incompetency of Mary Girdner on July 26, 1951, Alton Girdner, Lourine Girdner Hendrickson, Shelby Girdner

and Mrs. Alton Girdner testified that Mary Girdner was incompetent July 26, 1951. There was some question as to when she became incompetent but there is competent evidence to sustain the finding and judgment of the court.

■■ Did the court err in finding that Bryan Girdner should be required to account for the proceeds of the fire insurance policy for the loss of the dwelling on the 190 acre tract? Bryan Girdner testified that he paid from his own funds the insurance premiums on the policy, and that while the house was first insured by his father, the insurance was transferred to him when it was learned by the insurer that the property had been conveyed to Bryan Girdner, reserving a life estate.

Was the insurance premium paid on the property of Bryan Girdner or should he be required to account for this money to the administrators of the estate of R. Girdner and wife? Bryan Girdner testified that when he went into the Army he gave his father about $700 and a pickup truck. When asked if he paid any consideration for the deed from his father, dated November 1, 1942, he answered that he made an allotment to his father while he was in the service and sent several money orders to his father of $100 each. He testified that his father told him he wanted him to have the home place when he got back from the Army. Also, that he did not record the deed for fear it would cause trouble on the homestead exemption.

The general rule is announced in 29 Am. Jur., Insurance, 306, as follows:

"As soon as any interest in property vests in the vendee, he has an insurable interest therein, as in the case of a vendee under an executory contract of purchase which operates to vest in him an equitable title to the property. This is true even though the contract is voidable for fraud, since the fact that the contract is thus voidable does not affect the interest transferred and the contract operates until it has been rescinded. * * *"

Under the facts and circumstances before us we believe that Bryan Girdner is entitled to retain the proceeds of the insurance policy, despite the fact that the deed of November 1, 1942, has been declared null and void. When he paid for the insurance policy he held and had recorded a deed to the property. He had an insurable interest in the property and the insurance company had paid him the proceeds.

The judgment is affirmed as to the two hundred dollars for the livestock and the real estate involved herein but is reversed as to the $2,850 insurance money and the $3,890 placed with Bryan Girdner from his father's money belt.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, BLACKBIRD, IRWIN and BERRY, JJ., concur.

JACKSON, J., concurs in part and dissents in part.