[Civ. No. 19669. First Dist., Div. One. Dec. 14, 1961.]

THEODORE M. MONELL, Plaintiff and Appellant, v. COLLEGE OF PHYSICIANS AND SURGEONS OF SAN FRANCISCO, Defendant and Respondent.

COLLEGE OF PHYSICIANS AND SURGEONS OF SAN FRANCISCO, Plaintiff and Respondent, v. THEODORE M. MONELL, Defendant and Appellant.

Theodore M. Monell, in pro. per., for Appellant.

Edward J. Lynch for Respondent.

SULLIVAN, J.—Theodore M. Monell has appealed on a single record from separate judgments in two actions which were consolidated for trial. One action (No. 487816) is by appellant against respondent college for declaratory relief; the other (No. 487835) is by respondent college against appellant for the recovery of money. On respondent's motion the two actions were ordered consolidated for trial. The court after a nonjury trial made separate findings of fact and conclusions of law and rendered separate judgments for each action. In action No. 487816 the court rendered judgment to the effect that a certain alleged oral trust contended by appel-

lant to have been created by Kenneth I. Nesbitt in his lifetime was invalid and unenforceable and the disbursement by appellant of the sum of $10,484.44 on the claim of the existence of such trust was improper. In action No. 487835 the court rendered judgment in favor of respondent and against appellant in the sum of $10,484.44.

The record discloses the following facts:[1] Appellant was the attorney for Dr. Kenneth I. Nesbitt, a former member of the faculty of respondent college, who died in San Francisco on April 17, 1956. The will and two codicils of Dr. Nesbitt were thereafter admitted to probate by the Superior Court of the City and County of San Francisco and the Crocker-Anglo National Bank appointed executor. Appellant became the attorney for the executor. Under the provisions of the decedent's will, the respondent college, a nonprofit educational corporation, was designated residuary devisee and legatee and the recipient of the major portion of the estate.

While Dr. Nesbitt was a patient at St. Joseph's Hospital in San Francisco and about two weeks before his death, he signed and delivered to appellant a letter addressed to the Bank of America, N.T. & S.A., Powell-Post Branch, San Francisco, authorizing appellant to make withdrawals on appellant's signature from the savings account maintained by the doctor at said bank. On April 5, 1956, on this authorization, appellant withdrew $2,500 from the doctor's savings account and with said funds opened a checking account in appellant's name alone at the same bank. Although the checking account was not designated a trustee account on the bank's records, the signature card bore the typed notation "account set up for expenses of Dr. Nesbitt," and all checks subsequently drawn on the account, though signed by appellant individually, bore a stamp on their face "Theodore M. Monell, Trustee."

Mr. Monell testified that the above checking account was opened at Dr. Nesbitt's request to pay the latter's hospital and nursing bills and with the further oral instructions that in the event of the doctor's death any balance in the account was to go to the doctor's fiancee Velma Price. Appellant testified

[1] Although appellant was the only witness, certain documentary evidence, including the entire probate file in the Estate of Kenneth I. Nesbitt was admitted into evidence. The parties also agreed upon certain facts during the course of their opening statements to court, including certain facts appearing in a letter of report from the manager of the trust department of the corporate executor.

that the doctor said to him: "I want you to pay the nursing bills and the hospital bills as we go along. I'll either okay them, or Velma will okay them . . . if I should pass away, I want you to divide the account with Velma." Mr. Monell testified that he refused to have any part of the account, whereupon the doctor said to him: "Well, then, any balance that is left, pay it over to Velma" and that appellant responded: "That will be satisfactory. That can be done as a trust and I will hold the funds for the payment of these bills okayed by you or by Mrs. Price."

On April 13, 1956, four days before Dr. Nesbitt's death, under the same written authorization of Dr. Nesbitt, appellant withdrew the sum of $10,000 from the doctor's savings account and deposited said sum in the aforementioned checking account. Appellant testified that this was done at the request of the doctor who told appellant that he expected to remain in the hospital for an additional two or three months and that appellant "better have some more money." According to appellant Dr. Nesbitt told him: "It doesn't make any difference, it will be subject to my call when I get out of here," and appellant replied: "Well, that's all right with me. . . . That will be upon the same conditions: I will pay bills approved by Mrs. Price, and if anything happens to you, if you pass away, then any balance outstanding at that time, less any nursing bills that are then outstanding, will be paid to her; is that correct?" and Dr. Nesbitt responded: "Yes, that's right."

The two deposits in the checking account totalled $12,500. Between April 5, 1956, when the account was opened, and April 13, 1956, the date of the second deposit, appellant drew 13 checks totalling $1,303.56 in payment of various expenses of Dr. Nesbitt. On April 13, 1956, appellant drew a check payable to appellant in the sum of $547.22, representing payment of appellant's fee of $500 in a property matter, together with $47.22 costs which appellant testified Dr. Nesbitt had instructed him to pay. The remaining nine checks drawn on the account were dated April 20, 1956, three days after Dr. Nesbitt's death. The parties, however, agreed at the trial that at the death of Dr. Nesbitt the unused balance of the account was $10,484.44. A check representing this balance, and closing the account, was drawn on April 20, 1956, payable to Velma Price.

Although Mrs. Price apparently knew that Dr. Nesbitt had delivered money to appellant for the purpose of paying the doctor's bills, she did not learn until after the doctor's death that she was to receive the unused balance of the checking account. On April 26, 1956, with funds provided by the aforementioned $10,484.44 check to her order, Mrs. Price purchased two cashier's checks at the same branch of the Bank of America, one payable to appellant in the sum of $5,000, and one payable to herself for the remainder of $5,484.44. Appellant testified that he received the $5,000 cashier's check and that previously he had told Mrs. Price she had no liability to make any such payment.

On October 18, 1957, a decree of final distribution was made and entered in the Estate of Kenneth I. Nesbitt under the terms of which all of the residue of his estate was distributed to respondent. Although appellant was attorney for the estate during the course of its administration, he failed to advise the executor of the creation of any oral trust by the decedent, and, as a result, the transaction was never reported either for federal estate tax or California inheritance tax purposes. The matter came to the attention of the executor in September 1958, during an audit of the decedent's federal estate tax return, as a result of which the examining agent treated the transaction as a taxable transfer and proposed to assess a deficiency.

On March 23, 1959, appellant commenced the present action for declaratory relief against respondent college alleging the death of Kenneth I. Nesbitt, the admission of his will to probate, the distribution of the residue of his estate to the respondent college, and that said decedent had during his lifetime delivered the sum of $12,500 to appellant as trustee to pay decedent's hospital bills, with further oral instructions to pay any balance remaining of the funds to Velma Price, in the event of Dr. Nesbitt's death. The complaint further alleged appellant's expenditure of $2,015.56 and the payment after Dr. Nesbitt's death of the balance of $10,484.44 to Velma Price, the existence of a dispute between appellant and respondent, and an offer by appellant to pay the proportion of the inheritance and federal estate tax in connection with the above transfer of funds. The prayer was for a declaratory judgment decreeing that the oral trust, alleged by appellant, was valid and enforceable, determining the amount of the aforesaid taxes and discharging appellant from liability upon

his paying them to the executor of the will of Dr. Nesbitt.[2] On the same day, March 23, 1959, respondent college commenced an action for recovery of money against appellant. An amended complaint filed therein on August 5, 1959,[3] alleged the death, admission to probate of the will, and appointment of the executor of Dr. Nesbitt, that at the time of decedent's death, appellant had in his possession and control the sum of $12,500 which had been entrusted to him by the decedent for the purpose of paying decedent's expenses of illness and that said sum became a part of the assets of decedent's estate to which the respondent college was entitled as sole distributee of the residue.

Respondent filed an answer in the declaratory relief action denying the creation or existence of any trust, alleging that monies received by appellant were received by him as an agent and upon the death of Dr. Nesbitt the remainder thereof constituted a part of the assets of said decedent's estate, alleging (without separate statement in form of counterclaim or cross-complaint) that appellant was indebted to respondent college in the sum of $12,500 "or such portion thereof as may have remained" in appellant's hands after payment of any expenses, and alleging the commencement by respondent against appellant of the separate action (No. 487835) for recovery of money. Appellant filed an answer to respondent's complaint for monies in action No. 487835 denying that any of the monies involved were part of the said decedent's estate, denying that any amount was due, owing or unpaid from appellant to respondent college, and alleging, in language similar to that contained in appellant's own complaint in action No. 487816, the delivery by Dr. Nesbitt to appellant of the sum of $12,500 and the doctor's instructions with reference to the disbursements to be made therefrom.

Findings of fact and conclusions of law and judgments therein were separately made, signed and filed for each of the foregoing actions on the same day. The findings in each action contained a reference to the making of separate findings in the

---

[2] The executor had made final distribution according to the decree, which apparently authorized its retention of a reserve of $1,500 for taxes. The executor was not discharged at the time this controversy arose.

[3] The record does not contain any answer of appellant to the amended complaint but does contain appellant's answer to the original complaint. Apparently the parties considered this as an answer to the amended complaint although we find nothing in the record so providing.

other. In the declaratory relief action No. 487816 (brought by Mr. Monell against the college) the trial court found that, as regards the disposition of funds upon the death of Dr. Nesbitt, no valid trust was created for the reason that the purported trust was entirely oral and was an attempt to make a testamentary disposition of property without complying with legal formalities, and that appellant was obligated to refund the balance of $10,484.44 "in accordance with the judgment entered this day by this court in action Number 487835." The court concluded there was no valid trust created by the decedent as to the portion of the fund not expended for hospital expenses, that the payment of the balance to Velma Price was improper and rendered judgment accordingly. In action No. 487835 (brought by the college against Mr. Monell), the court found that at the date of Dr. Nesbitt's death there was in the possession and control of appellant the sum of $10,484.44, being the balance of funds belonging to the decedent, which constituted assets of the decedent's estate. The court also found that the "purported trust which defendant herein claims was created by decedent was oral and was testamentary in character and was, therefore, invalid in that it was not executed in writing by said decedent nor was the purported trust properly witnessed." The court concluded that the sum of $10,484.44 was the property of Dr. Nesbitt at his death, and became a portion of the assets of his estate and that the respondent college as distributee of the residue became entitled to the same.

The judgment in the declaratory relief action (No. 487816) provided: (1) The alleged oral trust created by Dr. Nesbitt during his lifetime was invalid and unenforceable; (2) the disbursement by Mr. Monell to Velma Price of $10,484.44 was improper; and (3) "upon payment of the judgment entered on this date in action number 487835 together with interest and costs," Mr. Monell would be relieved from liability for California inheritance and federal estate taxes except as to any penalty or interest incurred because of his conduct. The judgment in the action brought by the respondent college against Mr. Monell (No. 487835) was in favor of the college in the sum of $10,484.44, together with interest and costs.

Appellant's contention here is that the transaction constituted a valid oral trust. He argues that the trial court found all of the material allegations of his pleadings to be true but

erroneously concluded that the trust was invalid merely because it was oral.

Findings of fact must be liberally construed to support the judgment. (*Johndrow* v. *Thomas*, 31 Cal.2d 202, 207 [187 P.2d 681]; *Woodbine* v. *Van Horn*, 29 Cal.2d 95 [173 P.2d 17].) "They will receive a liberal but reasonable construction, in order to sustain rather than defeat the judgment. They will be construed with reference to the issues raised by the pleadings. If there are several findings they will be considered together, and as a whole, and if there is a conflict or inconsistency among them they will be reconciled, if possible, with a view of sustaining the judgment. The judgment will not be set aside unless the findings are incapable of being reconciled." (48 Cal.Jur.2d 317.)

The findings in both actions are in a very real sense integrated. In the action for declaratory relief brought by Mr. Monell against the college the court found as true the allegations of said appellant's complaint that Dr. Nesbitt had delivered to appellant as trustee certain monies for the purpose of paying hospital and nurses expenses, with further oral instructions to pay any balance remaining of said funds, in the event of Dr. Nesbitt's death, to Velma Price "but the Court also finds that, as regards the disposition of funds upon the death of Kenneth I. Nesbitt, no valid trust was created for the reason that said purported trust was entirely oral, and was an attempt to make testamentary disposition of property. . . ." In said action the court also found that the issues raised by the answer of the respondent college were decided in findings filed in action No. 487835 "to which reference is hereby made *and which are incorporated herein.*" (Emphasis added.) In action No. 487835 (brought by the college against Monell) the court found that at the time of the death of said deceased there was in the possession and control of Mr. Monell the sum of $10,484.44 being the balance of $12,500 belonging to the deceased and received by Mr. Monell from the deceased which sum of $10,484.44 constituted assets of Dr. Nesbitt's estate. The court also found as true allegations of Mr. Monell's answer similar to the aforesaid ones in Mr. Monell's complaint "but the Court finds that the *purported* trust which defendant *herein claims* was created by decedent was oral and was testamentary in character. . . ." (Emphasis added.)

We think that it is clear, taking both findings as an integrated whole, and even disregarding the language as to the

invalidity of the trust as being a conclusion of law (not raised as an objection by appellant) that the intent was to find that at Dr. Nesbitt's death appellant had in his possession funds belonging to the deceased, and therefore to his estate, and that such funds had never been effectively transferred to Velma Price although there had been oral instructions to that effect. From such findings, the conclusions that there was no valid trust created as to the portion of said fund not expended for hospital expenses, that the invalidity of said trust arose out of the fact that it was entirely oral and was an attempt to create a will, and that the respondent college as residuary distributee was entitled to said funds, clearly are not erroneous. Appellant contends that the trial court erroneously concluded that the purported trust was invalid merely because it was oral. This is without merit. The finding to such effect in action No. 487816 (Findings, par. III) is immediately preceded by a finding that the purported trust was oral *and* an attempt to make a testamentary disposition. The conclusions of law in such action are to the same effect. When all the findings and conclusions are read together it is clear that the court's conclusion as to the invalidity of the claimed trust was not merely because it was oral but because it was oral and an attempt to make a testamentary disposition of the balance of the funds.

The proper question for our determination is whether the finding of the trial court against the creation of a trust is supported by the evidence. Appellant's contention that the transaction in question constituted a valid oral trust in effect urges us to reweigh the evidence, and, in instances where appellant claims it is uncontradicted, to draw different inferences from those drawn by the trial court. The long-established principles defining the scope of our review are summarized in *Burke* v. *Bloom,* 187 Cal.App.2d 155 [9 Cal. Rptr. 563] at page 158 : ''the credibility of the witnesses, the weight to be accorded the evidence and the determination of factual conflicts and which of two or more inferences should be drawn from the evidence, are all matters within the exclusive province of the trial court (*Kuhn* v. *Gottfried,* 103 Cal. App.2d 80 [229 P.2d 137]) ; all conflicts in the evidence must be resolved in favor of the result reached below (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]) ; all reasonable inferences are indulged in favor of the findings and judgment (*Burke* v. *Chrostowski,* 46 Cal.2d 444 [296 P.2d 545];

*McCarthy* v. *Tally,* 46 Cal.2d 577 [297 P.2d 981]) and the evidence must be viewed in the light most favorable to the respondent (*Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231]; *Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183]); and when a finding is attacked on the ground there is lack of substantial evidence to sustain it, 'the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact' (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689])."

We first consider the legal principles governing the creation of trusts.

 It is well settled that trusts in personalty may be created, declared or admitted verbally and may be proved by parol evidence. (*Lefrooth* v. *Prentice,* 202 Cal. 215, 227 [259 P. 947]; Rest. 2d Trusts, § 52.) Such trusts when resting in parol must be established by full, clear and convincing evidence. (*Lefrooth* v. *Prentice, supra; Estate of Alberts,* 38 Cal.App.2d 42, 46 [100 P.2d 538]; *Gonzalez* v. *Riis,* 171 Cal. App.2d 473, 476 [340 P.2d 1015]; 49 Cal.Jur.2d 295.) In *Estate of Alberts, supra,* it is stated: "The existence of a trust must be established by evidence that is clear and convincing and this question as to whether the evidence is of such a nature is one to be determined by the trial court." (P. 46.)

 In *Gonzalez* v. *Riis, supra,* it is said: "The courts of this state have repeatedly held in varying types of cases relating to alleged oral gifts, transfers or creations of trusts that while 'No particular language or terminology is necessary to create a trust,' (*Neel* v. *Barnard,* 24 Cal.2d 406, 412 [2] [150 P.2d 177]), plaintiff must establish the alleged oral agreement by full, clear and convincing evidence [citations]. It has been repeatedly held that: 'Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing "is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." ' (*Viner* v. *Untrecht,* 26 Cal.2d 261, 267 [2] [158 P.2d 3].) " (Pp. 476-477.)

 Moreover, it is essential to the creation of a valid express trust that some estate or interest should be conveyed to the trustee and, when the instrument creating the trust is other than a will, that such estate or interest must pass imme-

diately, although the enjoyment of the *cestui* may commence in the future. The transfer may be of a future interest. (*Nichols* v. *Emery*, 109 Cal. 323, 330 [41 P. 1089, 50 Am.St.Rep. 43]; *Noble* v. *Learned*, 153 Cal. 245, 251 [94 P. 1047]; *Estate of Alberts, supra*; *Oakland Scavenger Co.* v. *Gandi*, 51 Cal. App.2d 69, 78 [124 P.2d 143]; Rest. 2d Trusts, § 32.) As stated by Mr. Justice Henshaw in *Nichols* v. *Emery, supra*, " [b]y such a trust, therefore, something of the settler's estate has passed from him and into the trustee for the benefit of the *cestui*, and this transfer of interest is a present one and *in nowise dependent* upon the settler's death." (P. 330; emphasis added.)

If, however, a trust is the instrumentality for making a testamentary disposition of property, the document creating the trust must comply with the requirements prescribed for the making of wills. (Rest. 2d Trusts, § 53.) In the comment to above section of the Restatement, it is stated: "A testamentary disposition of property is a disposition to take effect upon the death of the person making the disposition and as to which he has substantially entire control until his death. Such a disposition is testamentary whether made by a will or a document which purports to be a will or made by a transaction inter vivos, as by a deed, unsealed writing or parol declaration or transfer." (P. 130; see also 1 Scott on Trusts, § 53, p. 361.)

Section 56 of the Restatement Second of Trusts declares: "Where no interest in the trust property is created in a beneficiary other than the settlor before the death of the settlor, the disposition is testamentary and is invalid unless the requirements of the Statute of Wills are complied with." Under the foregoing rule the beneficiary may fail to acquire any interest during the settlor's lifetime, either because the settlor fails to make an effective conveyance to the trustee during such time or because there was no effective disposition of the beneficial interest prior to the settlor's death according to the intention of the settlor. (*Estate of Alberts, supra*, 38 Cal. App.2d 42; 1 Scott on Trusts, § 56, p. 422; Rest. 2d Trusts, § 56, com. a.) If, on the other hand, during the lifetime of the settlor, the beneficiary acquires an interest by a final and definitive disposition, such disposition is not testamentary merely because the enjoyment of the beneficial interest is postponed until the trustor's death. (1 Scott on Trusts, § 56.5,

p. 431.) But "if the owner of property delivers it or delivers a deed of conveyance to the intended trustee, but he manifests an intention that the conveyance shall not be effective until his death, the disposition is testamentary." (Rest. 2d Trusts, § 56, com. b.)

Where an interest in the trust property is created in the beneficiary during the lifetime of the settlor, such disposition is not testamentary "merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust and a power to control the trustee as to the administration of the trust." (Rest. 2d Trusts, § 57; *Nichols* v. *Emery, supra,* 109 Cal. 323, 331.) The principles enunciated by the last section are coordinated with the principles of agency. In effect, the section states that the *mere fact* of the reservation of the above powers will not transform the *trustee* into an *agent.* But, on the other hand, it will not make every agent a trustee within the scope of the principles governing trusts. Historically the formula of acceptable reservation of control has been developed by section 57 in the light of traditional agency concepts, and, as section 57 originally read, dispositions were proscribed as testamentary and invalid where the settlor reserved "also such powers to control the trustee as to the details of the administration of the trust that the trustee is the *agent* of the settlor . . ." (§ 57 as adopted in 1935; emphasis added; see 1 Scott on Trusts, § 57.2, pp. 450-451.) Section 57 observes the long-established principle that "[a]n agency is not a trust" (Rest. 2d Trusts, § 8) and points up the distinction between an agency or informal trust and the ordinary testamentary or living trust. (Rest. 2d Trusts, § 57, com. b, p. 153.) As the last-cited comment states: "On the other hand, where the owner of property delivers possession of it to a person as his agent directing him to deliver the property to a third person on the owner's death, a mere agency is created which terminates on the death of the principal. The disposition in favor of the third person is testamentary and invalid unless the requirements of the Statute of Wills are complied with." (P. 152.)

The result is the same where the agent is entrusted with title since such fact alone does not make applicable the rules which are applicable to the trusts instead of the rules applicable to agency. (Rest. 2d Trusts, § 8, com. h; Rest. 2d Agency, § 14 B; see 1 Scott on Trusts, § 57.2, pp. 449-451.)

The last authority declares at page 451: "If the transaction were one which would involve merely an agency but for the fact that the legal title is technically vested in the person entrusted with possession, it is clear that the disposition is testamentary."

Whether or not the decedent in the case before us created during his lifetime a trust which was nontestamentary, valid and enforceable was a matter for the determination of the trial court under the foregoing principles and applying the pertinent rules as to degree of proof. *Noble* v. *Learned, supra,* 153 Cal. 245, 251; *Gonzalez* v. *Riis, supra,* 171 Cal.App.2d 473, 476; *Fahrney* v. *Wilson,* 180 Cal.App.2d 694, 697 [4 Cal. Rptr. 670].)

We believe that the evidence disclosed by the record is sufficient to support the trial court's conclusion that the attempted disposition was testamentary in character and not complying with the requirements for the execution of wills was therefore invalid. The relationship of client and attorney and therefore of principal and agent existed between Dr. Nesbitt and Mr. Monell. The former entrusted certain funds to Mr. Monell to be used in paying certain bills which would first be approved for payment either by the decedent or Velma Price. The record is bare of any evidence that Mr. Monell was to exercise an independent judgment with respect to such payment of bills. It was reasonable for the court to infer from this evidence that Mr. Monell was acting as the agent of the decedent and subject to the decedent's control. Support for such an inference is found in the decedent's letter to his bank authorizing appellant "as my attorney-in-fact" to withdraw funds from decedent's savings account and in the signature card of appellant's checking account which recited "account set up for expenses of Dr. Nesbitt." That appellant had title to the funds and on his checks referred to himself as "trustee" does not militate against the inference; his becoming an "agent-trustee" and, in this respect, his compliance with the pertinent professional regulations (Rules of Professional Conduct of the State Bar of California, rule 9) do not make applicable the principles of trusts rather than of agency.

It is also a reasonable inference from the decedent's statements as related by Mr. Monell and set forth heretofore that the decedent did not intend to create any interest in the checking account funds in Velma Price prior to his death. Both

incidents of conversation show that he desired to keep control of the account and the disbursements from it. All bills were to be approved by him or Mrs. Price. The account was "subject to my call." His arrangements for establishing the account and his discussion with Mr. Monell as to who should "take care" of the account are similar to those usually had between a principal and agent. It can reasonably be inferred from his words that at no time prior to his death was any beneficial interest in the funds to be transferred to Mrs. Price. The words themselves: "if I should pass away, I want you to divide the account with Velma," and similar language used in the second incident, do not show any present transfer of a beneficial interest but look to the only act of transfer as occurring, if at all, after the decedent's death. The words "any balance that is left, pay it over to Velma," i.e., in the event of death and "any balance outstanding at that time . . . *will be paid* . . ." (emphasis added) in the event of death are consistent with the conclusion that Mrs. Price was to have no interest, beneficial or otherwise, in the monies while the decedent controlled them through his attorney Mr. Monell. Finally, all of the conversations between decedent and appellant are consistent with the conclusion that they were those of a principal giving directions to his agent.

Considered from another point of view, it was reasonable for the trial court to determine against the existence of a trust because the evidence warranting any such inference was not full, clear and convincing.

Appellant argues that the evidence shows an unconditional transfer of funds to him by the decedent, creating a trust which "carved out two estates": a life estate for the benefit of Dr. Nesbitt with a vested remainder in Mrs. Price. He asserts that the validity of the trust is therefore established by his, appellant's, uncontradicted testimony. Such an argument is entirely devoid of merit. It presents merely an opposing inference which appellant urges should be drawn instead of those inferences drawn by the trial court. Indeed, appellant does not, as he cannot, contend that the inference he urges is the *only* reasonable one which can be so drawn. Even if we thought appellant's inference was the more reasonable one— and we do not—we could not disturb the inference drawn by the trial court. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421,

426 [213 P. 42, 26 A.L.R. 123] ; *Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602 [86 P.2d 829].)

The trial court's conclusion thus withstands the attack of appellant's citations. Appellant contends that in section 57 of the Restatement Second of Trusts is found the touchstone of the problem. As we have shown heretofore, this section applies when an interest *has* been created in a beneficiary other than the settlor, and declares that the disposition is not testamentary merely because a power to revoke is reserved. It does not extend its protective influence to agency or informal trust transactions where it has been determined that *no* interest has been effectively created in the beneficiary before the settlor's death.

Appellant relies on *Oakland Scavenger Co.* v. *Gandi, supra,* 51 Cal.App.2d 69; *Randall* v. *Bank of America,* 48 Cal.App. 2d 249 [119 P.2d 754] ; *Leydecker* v. *Warren,* 135 Cal.App. 2d 484 [288 P.2d 51], and *White* v. *Bank of America,* 53 Cal. App.2d 831 [128 P.2d 600]. In the first three cases the trial court's finding in favor of the existence of a trust, and in the fourth case, in favor of a completed gift, was held to be sustained by the evidence. "Here, however, as has been stated, the situation is just the opposite. If there is any evidence consistent with the conclusion that a trust was not created, the finding of the lower court must stand." (*Noble* v. *Learned, supra,* 153 Cal. 245, 253.)

*Girdner* v. *Girdner* (Okla.) 337 P.2d 741, a decision of the Supreme Court of Oklahoma, urged on us by appellant because of facts claimed to be almost identical with the instant case does not alter the foregoing conclusion because of Oklahoma rules governing the scope of review which are different from those of California. In *Girdner,* the lower court rendered judgment in favor of the administrator of the decedent's estate and against the decedent's son for certain monies delivered by the decedent to his son. The evidence disclosed that the money was turned over to the son to pay the father's medical, hospital and funeral bills and to use the balance to take care of the decedent's wife. The court noted that the son's compliance with these directions had not been clearly denied and reversed the judgment, apparently on the principles, governing in equity cases in that state, that the reviewing court will examine and weigh all the evidence and if it finds the judgment to be against the clear weight of the evidence will render such judgment as

should have been rendered. This of course, as we have pointed out, is not the well defined scope of review in California.

The judgments are affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied January 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied February 7, 1962. Dooling, J., was of the opinion that the petition should be granted.