Newman, Circuit Judge, dissenting. I respectfully dissent. Joint inventor Vivian Hsiun never had co-ownership of the ’788 Patent, contrary to the majority opinion. By her Employment Agreement, her invention was the property of her employer; she was not the owner, and she could not acquire ownership simply by refusing to sign a separate “assignment” document. Vivian Hsiun was employed on the basis of a detailed and thorough Employment Agreement, whereby all of her inventions and other product of her employment are owned by the employer. After the ’788 Patent application was filed, of which she is listed as one of three joint inventors, Ms. Hsiun declined to sign the PTO’s form of assignment document. This lapse was discovered by the defendants during this litigation, and the defendants moved to dismiss for lack of standing to enforce the patent. The district court granted the motion and the panel majority agrees, finding sua sponte that Ms. Hsiun owns one-third of the ’788 Patent. However, the .Employment Agreement placed ownership of the employee’s inventions with the employer. In view of the Employment Agreement, a separate assignment document is not necessary to confirm that the employee has no ownership of the ’788 Patent. Nor has the employee asserted any such ownership. Discussion The Employment Agreement contains several provisions concerning ownership of inventions made by Ms. Hsiun during her employment, as follows: 1. Section 2.b provides that all inventions made during employment will be disclosed and held in trust and assigned to the Company Agreement Section 2.b obligates Ms. Hsiun to disclose and to assign all her right, title, and interest in all inventions that she makes while employed by the Company: 2.b. Inventions and Original Works Assigned to the Company. I agree that I ■will- promptly-make'full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, original works of authorship, developments, improvements or trade secrets which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company. ... Empl. Agmt., J.A. 258. On Ms. Hsiun’s refusal to sign the PTO’s standard assignment form, the PTO accepted the Employment Agreement as showing ownership by the employer. Ms. Hsiun .did not object to the procedures in the PTO, and the face of the patent lists AVC Technology, Inc. as “Assignee.” Ms. Hsiun did not object, and has never asserted any ownership interest in the ’788 Patent. 2. Section 2.c states that invention records are the property of the Company In conformity with the other provisions on ownership of inventions made by Ms. Hsiun during her employment, the Employment Agreement provides that all invention records are the property of the employer: 2.c. Maintenance of Records. I agree to keep and maintain adequate and current written records of all inventions and original works of. authorship made by me (solely or jointly with others) during the term of my employment with the Company. The records, will .be in the form of notes, sketches, drawings, and any other' format that may be specified by the. Company. The records will be available to and remain the sole property of the Company at all times. Empl. Agmt., J.A. 259. It is not disputed that the ’788 invention was made during Ms. Hsiun’s employment. She has asserted no ownership or any other rights to her invention records. . . 3. Section 2.e states the employee’s obligation to assist in obtaining patents This clause of the Employment Agreement refers to patents on inventions “assigned hereunder” to the employer: 2.e. Obtaining Letters Patent, Copyrights, and Mask Work Rights. I agree that my obligation.to assist the Company to obtain United States or foreign letters patent, copyrights, or mask work rights covering inventions, works of authorship, and mask works, respectively, assigned hereunder to the Company shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate for time actually spent by me at the Company’s request on such assistance, ... Empl. Agmt., J.A. 259. The words “assigned hereunder” and the continuing obligations after termination of employment conform to the mutual intent and understanding, of employer and employee, with respect to the Company’s ownership of inventions made during her employment. Ms. Hsiun did not object to the Company’s filing of this patent applications naming her as a joint inventor; such filing was authorized by the agreed right of ownership of her inventions. 4. Section 2.e provides for action by the employer in absence of the employee’s signature on patent documents Ms. Hsiun agreed that if her signature is unobtainable for “inventions or other rights assigned to the Company,” the Company may act in her stead: 2.e. [continued]. ... If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign letters patent, copyrights, or mask work rights covering inventions or other rights assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyrights, and mask work rights with the same legal force and effect as if executed by me. ... Empl. Agmt., J.A. 259-60. This provision was a basis of the Company’s prosecution of the ’788 application, and issuance of the ’788 Patent naming Ms. Hsiun as a joint inventor and AVC Technology as as-signee. 5. Section 2.b requires the employee to hold all inventions in trust for the Company 2.b. I agree that I ... will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, ... during the period of time I am in the employ of the Company. Empl. Agmt., J.A. 258. My colleagues on this panel concede that the trust provision of the Employment Agreement may apply, Maj. Op. at 1322, but nonetheless hold that the trust provision is ineffective to establish that Ms. Hsiun held her inventions in trust “for the sole right and benefit of the Company.” My colleagues state that it is necessary for the beneficiary to sue the trustee in order to obtain the benefit of the trust. No supporting authority is cited, or relates to these facts. The parties’ briefs discuss a California case in which the court held that a trust was not created on a dying man’s oral instruction to pay his hospital bill and dispose of his funds, the court stating in Monell v. College of Physicians & Surgeons of San Francisco, 198 Cal. App. 2d 38, 48-49, 17 Cal.Rptr. 744 (1961), that “it is essential to the creation of a valid express trust that some estate or interest should be conveyed to the trustee and, when the instrument creating the trust is other than a will, that such estate or interest must pass immediately, although the enjoyment of the cestui may commence in the future.” The Monell court held that the oral instruction did not create a trust when the attempted disposition was testamentary in nature, id. at 51, 17 Cal.Rptr. 744, and that the disposition had to comply with the formalities of wills. Id. To the extent that the Monell case is relevant to the trust provision of the Employment Agreement, it supports the immediate conveyance of inventions to the trust, for the benefit of the Company, in accordance with the signed Employment Agreement. The panel majority also states that under California law the beneficiary of the trust is not the real party in interest. However, California law accords with the general law of trusts, as represented by Kadota Fig Ass’n of Producers v. Case-Sivayne Co., 73 Cal. App. 2d 796, 801, 167 P.2d 518 (1946) (“The real parties in interest are the beneficiaries under the business agreement, and not the trustees or directors.”). Ms. Hsiun is the trustee of her inventions, which vest in trust immediately on creation of the invention. The employer is the beneficiary of her inventions as established by the Employment Agreement. The beneficiary is not denied its beneficial rights if the trustee is absent or inactive. See id. (“The reason for requiring an action to be prosecuted in the name of the real parties in interest (Code Civ. Proc., § 367) is to save the defendants from a multiplicity of suits .... ”). At a minimum, the trust provision further demonstrates the mutual intent and understanding that Ms. Hsiun’s inventions made during her employment are for tíie sole benefit of the employer. 6. Section 2.e provides a “waiver and quitclaim” of infringement claims of patents “assigned hereunder” The Employment Agreement contains the following waiver and quitclaim provision: 2.e. [continued] ... I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have infringement of any patents, copyrights, or mask work rights resulting from any such application assigned hereunder to the Company. Empl. Agmt., J.A. 260. The waiver and quitclaim provisions comport with the mutual intent and understanding that Ms. Hsiun retained no ownership of patents on her inventions “assigned hereunder to the Company.” The quitclaim assures that any rights the grantor had, are transferred to the grantee of the property. California precedent is clear. E.g., City of Manhattan Beach v. Superior Court, 13 Cal.4th 232, 52 Cal.Rptr.2d 82, 914 P.2d 160, 164 (1996) (“A quitclaim deed transfers whatever present right or interest the grantor has in the property.”); see generally“Quitclaim,” Black’s Law Dictionary (4th ed. 1968) (a quitclaim is “intended to pass-any title, interest, or claim which the grantor may have in the premises”). The panel majority states that since the ’788 Patent was not assigned to the Company, “the quitclaim provision has no application.” Maj. Op. at 1319. To the contrary: if indeed the patent was not individually assigned in a special document, the “quitclaim to the Company” assures transfer of the property to the Company. A quitclaim does not require that the property was already assigned, for in such case no quitclaim would be needed. However, the quitclaim does require that “any and all claims” that may “now or hereafter” exist, are “assigned hereunder to the Company.” This provision further renders impossible that Ms. Hsiun now owns one-third of the ’788 Patent, for any such ownership was quitclaimed to the employer. 7. Section 5 requires the employee to execute all documents needed to carry out the Agreement The record before us does not explain why Ms. Hsiun refused to sign the provided PTO assignment form, for the Employment Agreement is explicit as to the employee’s obligations to execute any required documents: 5. Representations. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith. Empl. Agmt., J.A. 260-61. Throughout this litigation, there is no assertion-by Ms. Hsiun of any ownership interest in the '788 Patent, or any negation of her obligations set forth in the Employment Agreement.[1] ' 8. Other provisions of the Employment Agreement compoH with the mutual understanding of employer ownership of employee inventions Several other provisions of the Employment Agreement relate to inventions, and further implement the understanding of employer ownership of the employee’s work product: Section 3 prohibits conflicting future employment, Section 4 provides for ownership by the Company of all documents and property created by the employee. Section 6,b states that this is the entire agreement and cannot be changed except “in writing signed by the party. to be charged.” Section 6.c provides for severability. Section 6.d binds the employee’s heirs and executors for the benefit of thé Company, its successors, and its assigns. Section 6.e provides that the Agreement survives the termination of employment, and benefits the Company’s successors and assigns. . Section 7 requires the employee to identify all pre-employment inventions—there were none. It is inconceivable that the parties intended that unless a separate assignment document was signed as to each and every aspect of the employee’s work product, the provisions of the Employment Agreement would not apply. . 9. Section 6.a of the Agreement states that California law applies California contract law. provides: Cal. Civ, Code § 1643: A, contract must receive such an interpretation as' will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties. The record contains no challenge to the mutual intent and understanding of the parties to the Employment Agreement. The provisions of the Employment Agreement demonstrate, over and over, the intent and understanding that Ms. Hsiun’s inventions made as an employee are the property of the employer. There aré no contrary provisions, and no contrary evidence was presented in this action. Every contract provision, and the entirety of the Employment contract, show this mutuality of intent. The intention of the parties must be respected and “intent is to be inferred, if possible, solely from the written provisions of the contract.” People ex. rel. Lockyer v. R.J. Reynolds Tobacco Co., 107 Cal. App. 4th 516, 525, 132 Cal.Rptr.2d 151 (2003). California law provides no contrary authority, and none'was asserted in this case. It is not reasonable now to hold that the Employment Agreement fails in its intended purpose, for every provision of the Agreement accords with and implements the intent that the employee’s inventions are the property of the employer. 10. The Delaware Chancery Court quit-claimed. and assigned the 788 Patent to the plaintiff The record further demonstrates that ownership of the ’788 Patent, by Ms. Hsi-un’s employer and its successors, was recognized in corporate proceedings in Delaware. After a challenge to the. transfer of the ’788 Patent, a.Receiver was appointed by the Chancery Court, who held.as follows: I, Joseph Cicero, ... have quit-claimed, assigned, transferred, set over and conveyed and do hereby quitclaim, assign, transfer, set over and convey unto Advanced Video Technologies LLC, a New York limited liability company (“Assignee”), its successors, and assigns, any and all right, title, and interest to United States Patent No. 5,781,788 (the “Patent”) held,and enjoyed, by Assignor, for the entire term of the Patent, including any reissues, reexaminations, and extensions thereof, including the right to sue for and recover damages in respect of past acts of infringement. This assignment includes, but is not limited to, all Assignor’s right to all income, royalties, damages and payments now or hereafter due and payable, and in and to all causes of action, either in law or in equity, and the right to sue and counterclaim for and collect past and continuing damages for infringement. The right, title and interest conveyed in this Assignment is to be held and enjoyed by Assignee and Assignee’s successors and assigns as fully and exclusively as it would have been held and enjoyed by Assignor had this assignment not been made. [signed] Joseph B. Cicero, Esq., Date: 6/5/15 Receiver for AVC Technology, Inc. J.A. 130. The record does not show any appeal by any person or other entity from the Delaware Court’s determination, or any challenge to or dispute with this establishment of ownership of the ’788 Patent by Advanced Video Technologies. 11. Federal Circuit precedent does not contravene the Employment Agreement Ethicon Inc. v. U.S. Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998) does not support the position that Ms. Hsiun owns one-third of the ’788 Patent. The situations and rulings are widely different. In Ethicon, a consultant who had not agreed to assign his inventions made a contribution to a claim, and the court held that the consultant owned an undivided interest in the patent. Id. at 1464, Here, in contrast, ownership of Ms. Hsiun’s inventions is established by the Employment Agreement. Unlike Ms. Hsiun’s contractual agreement, in Ethicon there was no employment agreement, no agreement as to ownership of inventions, no holding in trust for the employer, no. waiver and quitclaim to the employer. The ruling in Ethicon does not govern ownership of Ms. Hsiun’s inventions. Nor does the ruling in Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574 (Fed. Cir. 1991) apply to this case. In Arachnid a consultant had agreed by contract that his inventions “will be assigned” to the company, but he did not execute an assignment. The court held that although equitable title may have, been acquired by the company, legal title was needed before damages could be obtained. Id. at 1579. The gaps that the court perceived in the consulting agreement in Arachnid, are filled in the Employment Agreement signed by Ms. Hsiun. Her Agreement not only provides for ownership by the employer of all inventions made by the employee, but imposes a trust and implements a quitclaim in favor of the employer. See Akazawa v. Link New Tech. Int’l, Inc., 520 F.Sd 1354, 1356 (Fed. Cm. 2008) (“[T]here is nothing that limits assignment as the only means for transferring patent ownership. ... [Ojwnership of a patent can be changed by operation of law.”). Ms. Hsiun’s Employment Agreement is directly controlled by contract law. The Employment Agreement that she signed established ownership by the employer of the ’788 Patent by way of clear contract provisions implementing the intent and understanding and agreement of employer and employee, as a condition of the employment. There is no ambiguity, and Ms. Hsiun asserts no ownership in the ’788 Patent. Conclusion The Employment Agreement established the terms and conditions of Ms. Hsiun’s employment. These terms and conditions include ownership by the employer of all inventions made by the employee during her employment. My colleagues’ award to Ms. Hsiun of one-third of the ’788 Patent cannot be supported, under any view of any law. I respectfully dissent. . The panel majority states that “the terms of the Employment Agreement provide otherwise," the “otherwise” being “unambiguous provisions" in the Employment Agreement purportedly negating assignment to the employer. Maj. Op. at 1323. No citation is offered, and I-have searched in vain for any such unambiguous provision.