Jerold D. KETHLEY, M.D. and John R. Hayes, M.D. d/b/a Broadway Clinic and Hospital, a partnership, Plaintiffs in Error,

v.

Thomas C. FINN, M.D., Defendant in Error.

No. 42138.

Supreme Court of Oklahoma.

Feb. 24, 1970.

R. N. Steed of Steed & Clark, Shawnee, for plaintiffs in error.

Wm. Bishop and Wm. Wantland, of Bishop & Wantland, Seminole, for defendant in error.

WILLIAMS, Justice.

This is an appeal from a judgment entered in an action in which plaintiff sought an accounting with relation to his interest in a partnership from which he had previously withdrawn. On appeal, the parties will be referred to as they appeared in the trial court.

Prior to August 1, 1958, plaintiff and defendants, all medical doctors, practiced medicine at the Baxter Clinic in Shawnee, Oklahoma. Defendants, Dr. Kethley and Dr. Hayes, had practiced at the Baxter Clinic for approximately four and six to seven years respectively. Defendants apparently were salaried employees of the Baxter Clinic in their first years of practice, but in January, 1956, they became income-sharing partners in that clinic. Plaintiff was employed by the Baxter Clinic in March or April, 1958, and became an income-sharing partner in that clinic in July, 1958.

In the spring of 1958, defendants became somewhat dissatisfied with their agreement with the Baxter Clinic and Dr. Kethley approached Dr. J. W. Baxter, owner of the clinic, seeking a new financial arrangement. At this time, Dr. Baxter offered to sell the clinic to defendants but did not set a sales price. Subsequent to receiving Baxter's offer to sell, defendants made preliminary inquiry of a Shawnee bank concerning the feasibility of financing the purchase of the clinic.

In June or July, 1958, Baxter set a definite price of $125,000 for the sale of the clinic to defendants. Defendants then discussed with plaintiff the possibility of his joining with them in purchasing the Baxter Clinic, and the three agreed to form a partnership and purchase the clinic from Dr. Baxter.

In the sales contract executed August 1, 1958, by Dr. Baxter, as seller, and defendants and plaintiff, as purchasers, the recited sales price was $125,000, divided as follows: $40,000 for the land and the clinic building located thereon; $70,000 for the equipment located in the clinic; and, $15,-000 for Dr. Baxter's one-fourth interest in the clinic's accounts receivable. The purchase price paid by defendants and plaintiff was completely financed through their execution of notes payable to Dr. Baxter. On the same date of the execution of the sales contract, defendants and plaintiff executed a lease contract covering a hospital owned by Dr. Baxter together with two other persons. This lease was for a term of ten years at a minimum rental of $750.00 per month.

Effective August 1, 1958, defendants and plaintiff began operation of the newly-purchased clinic and hospital under the name of "Broadway Clinic" and "Broadway Hospital." The clinic and hospital were operated under the terms of a partnership agreement also effective August 1, 1958, although it was not executed until several months thereafter. Pursuant to this agreement, defendants and plaintiff were equal partners.

The clinic and hospital were operated under the above agreement until July 1, 1959, at which time plaintiff withdrew from the partnership. Although the evidence is conflicting as to the time when defendants had knowledge of plaintiff's intention to withdraw, it is clear that he gave formal written notice of this intention in May, 1959.

Subsequent to his withdrawal as a partner in the Broadway Clinic, plaintiff requested an accounting from the Broadway Clinic and payment based upon this accounting for the net value of his partnership share. After about two years of sporadic discussions, plaintiff and defendants could reach no agreement concerning the value and plaintiff instituted this action in the trial court.

As provided in the partnership agreement, the value of a withdrawing partner's share is to be determined within a reasonable time by a vote of three-fourths of the remaining members of the clinic. In summary, as defined in the agreement, the net value of a partnership share is the value of the share at the close of the last fiscal

year increased or decreased by the net profit or loss and further adjusted by the increase or decrease in the accounts receivable under three years old, evaluated at 60% of their book value. In the first five years of the partnership, depreciation was not to be considered in computing the net value of a partnership share. The partnership agreement provides that a withdrawing partner is relieved from legal responsibility for the liabilities of the partnership; however, it also provides that these liabilities are to be taken into consideration in determining the net value of the partnership interest. Decisions made by the remaining members of the clinic upon questions of fact concerning the interest of a withdrawing partner are to be conclusive when based upon proof by affidavit or upon written evidence satisfactory to them.

After determination of the net value of the partnership share, a withdrawing partner is to be paid 50% of the value.

At trial below there were four areas of disagreement between the parties concerning the net value of plaintiff's partnership. Defendants contended that the net value of each interest stated in the agreement to be $14,610.93 as of the beginning date of the partnership on August 1, 1958, was a fictitious accounting entry and did not reflect the value as of that date.

To support this contention, defendants introduced evidence attempting to establish that Dr. Baxter owned all accounts receivable in the old partnership rather than the one-fourth interest stated in the sales contract, and that the difference of $45,000 between the value of the accounts receivable as stated in the contract ($15,000) and in their book value ($60,000) was placed as additional value on the equipment in the clinic for the purpose of gaining Baxter income tax advantages in the sale. Defendants then maintain that the inflated value of the equipment and the book value of the accounts receivable were used in the clinic's beginning accounting procedure and that the difference of $45,-000 between the purchase price ($125,000) and the book value of the assets ($170,-000) was considered to be a contribution to capital by the new partners of the remaining three-fourths of accounts receivable in the Baxter Clinic. To establish that none of the new partners had ever owned any of the accounts receivable in the Baxter Clinic, defendants introduced the partnership agreement of the former clinic which provided that Dr. Baxter owned all personal property of that clinic and that the other partners therein only shared in the income.

Defendants and the accountant who represented the Broadway Clinic at all times pertinent herein testified that the above accounting procedure was designed to insure that the original members of the partnership, who took the initial risk in financing and establishing the new clinic, would have a larger net partnership value than any members added subsequently.

Although plaintiff testified at trial that it was his opinion he owned one-fourth of the accounts receivable of the Baxter Clinic when he became a partner therein on July 1, 1958, he admitted in deposition that it was his understanding that Dr. Baxter owned all accounts receivable of the Baxter Clinic. Plaintiff further admitted that the original members of the Broadway Clinic were interested in having the value of their partnership shares reflect their initiative in establishing the new clinic.

In the second area of disagreement between the parties, the value of the accounts receivable as of the time of plaintiff's withdrawal from the new partnership effective July 1, 1959, plaintiff's evidence was based upon the independent evaluation of his own accountant witness, rather than the book value of the accounts receivable as of August 1, 1958. After adding all billings and subtracting all receipts during the period of plaintiff's membership in the partnership, plaintiff's witness determined the value of the accounts receivable to be $68,320.17 as of July 1, 1959. On the con-

trary, defendants' witness began, as provided in the partnership agreement with the book value of the accounts receivable as of August 1, 1958, and after adding all billings and subtracting all receipts during the time in question, determined the value of the accounts receivable to be $47,317.44 as of July 1, 1959.

The third area of disagreement concerned depreciation. Plaintiff maintained that the provisions of the partnership agreement above recited controlled and that depreciation could not be deducted in determining the value of his share. Defendants contended that to protect the remaining partners' equity, an allowance for depreciation should be allowed.

In the fourth area of disagreement, defendants contended that in accordance with the provisions of the agreement involved herein, the liability arising from the lease covering the Broadway Hospital must be taken into consideration in determining the value of plaintiff's share. To controvert this contention, plaintiff's accountant witness testified that the lease liability was in the nature of a contingency and could not be used in determining the value of a partnership share.

At the conclusion of the trial, the court below adopted the accounting report of plaintiff's accountant witness. As can be seen from the above summary, this report was based upon the use of the beginning net value of each partner's share as set forth in the partnership agreement; the re-evaluation of the accounts as of August 1, 1958; and the exclusion of any deduction for the possible liability arising from the Broadway Hospital lease. This accounting report found the net value of plaintiff's partnership share to be $28,882.-80, and in accordance with the provisions of the agreement, the trial court entered judgment for 50% of this value, or $14,-441.40. From this judgment and an order overruling their motion for new trial, defendants appeal.

An action for an accounting is of equitable cognizance, and in such cases the reviewing court will examine and weigh all of the evidence and will not reverse the judgment of the trial court unless such judgment is clearly against the weight thereof. However, if such judgment is clearly against the weight of the evidence, this Court will render or cause to be rendered such judgment as should have been rendered below. Girdner v. Girdner, Okl., 337 P.2d 741.

As can be seen from the above summary of the areas of disagreement, both parties, on appeal as well as in the court below, are attempting to enforce those provisions of the partnership agreement most favorable to their positions but to avoid by introduction of evidence the enforcement of those provisions not favorable to their determination of the net value of each partner's share. For example, defendants attempt to establish that the beginning net value of each share as set forth in their agreement was actually fictitious and should be disregarded. In the same vein, plaintiff disregards the provision of the agreement requiring the beginning book value of the accounts receivable to be used as a starting point for their calculation and attempts to re-evaluate their amount as of the inception of the partnership. In our view, there must be some consistency in the approach to the determination of the value of plaintiff's share in the partnership.

In our opinion, the weight of the evidence submitted below clearly establishes that the beginning partners of the Broadway Clinic contemplated the admission of additional partners and desired their capital accounts, as compared to any new member, to reflect the initiative and risk they had taken to establish the new clinic. This result was accomplished by the over-evaluation of the clinic equipment purchased in an amount ($45,000) corresponding to the value of the accounts receivable the three partners were said to have "owned" in the Baxter Clinic. The partnership agreement of the Baxter Clinic clearly establishes that neither defendants nor plaintiff owned any accounts receivable of

the old clinic but were merely income sharing partners therein.

■ In our opinion, the procedure used to enhance the capital accounts of the original partners as compared to those of partners added in the future should not be used within a few months by one of the original partners to take advantage of the other original partners. Therefore, to reflect the value of each correctly, each partner's capital account should have been reduced by one-third of $45,000, or $15,000.

■ As we have found that defendants could vary the original entry to the capital accounts as their evidence clearly established such entry to be a fictitious one, it is our opinion that equity requires the original book value of the accounts receivable to be varied if plaintiff's evidence establishes that such value was incorrect. At trial, plaintiff introduced evidence enumerating and evaluating on the basis of age each account receivable purchased by the new partners. This evidence tended to establish that the purchased accounts receivable were of a value somewhat higher than that reflected on the clinic's books. The trial judge adopted plaintiff's amount as reflecting the beginning value of the accounts receivable, and, in our opinion, the judgment so adopting was not clearly against the weight of the evidence.

■ As noted above, the trial court's judgment, in accordance with the provisions of the agreement, did not allow for any deduction for depreciation in the computation of plaintiff's partnership share. Defendants contend that this provision was also for the purpose of enlarging the original members' shares and that depreciation should be deducted. However, the evidence below does not clearly establish that the sole purpose of this provision relating to depreciation was to aid the original partners. The provision provided that depreciation was to be eliminated from the computation of the value of each share for a period of five years. In addition the evidence establishes that the equipment and facilities involved were fairly old. In our view, the trial court did not err in following the provisions of the agreement and in excluding a deduction for depreciation.

■ As to the fourth area of disagreement, there is no evidence in the record before us to compute a liability deduction for the lease covering the Broadway Hospital. The record does reflect the term and the minimum rental per month. However, there is no evidence concerning its value as an asset. In view of this lack of evidence, the trial court did not err in disallowing any reduction for possible liability arising from the hospital lease.

Therefore, it is our opinion that the net value of plaintiff's share found by the trial court should be reduced by $15,000, the amount of the fictitious bookkeeping entry we have found to have been made solely to enhance the original partners' capital accounts. As reduced, the net value of the share is $13,882.80. In accordance with the provisions of the agreement, plaintiff is entitled to receive 50% of this amount, or $6,941.40.

The judgment of the trial court for plaintiff in the amount of $14,441.40 is modified to be in the amount of $6,941.40, and, as modified, is affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.